5 Cal.3d 56 (1971)
485 P.2d 543
95 Cal. Rptr. 343
Estate of ELSINORE MACHRIS GILLILAND, Deceased.
WILLIAM L. MURPHEY, as Trustee, etc., et al., Petitioners and Respondents,
v.
SALVATION ARMY et al., Objectors and Appellants.
Docket No. L.A. 29864.
Supreme Court of California. In Bank.
June 9, 1971.
*57 COUNSEL
Meserve, Mumper & Hughes, Cromwell Warner, Jr., and John Deacon for Objectors and Appellants.
William L. Murphey, in pro. per., Larwell & Wolfe, Charles W. Wolfe and Charles A. Murphy for Petitioners and Respondents.
OPINION
SULLIVAN, J.
This is an appeal from a judgment settling and approving the first account current and report of the trustees of a testamentary trust, and allowing fees to the trustees in the sum of $125,000 and to the attorneys for the trustees in the sum of $25,000. The only portion of the judgment *58 attacked on appeal is the above award of trustees' fees. Although making no claim that the sum of $125,000 is unreasonable compensation for the services rendered, appellants contend that the award cannot be upheld because not all the services being compensated were rendered to the trust. We have concluded that there is substantial evidence in the record to support the fee on the basis of services rendered solely for the benefit of the trust. We, therefore, affirm the judgment.
William L. Murphey, Norman J. Essig and Union Bank (trustees) are co-trustees of a testamentary trust established under the will of Elsinore Gilliland. On October 31, 1967, by preliminary decree the probate court distributed property to the trust of an appraised value of $16,500,000. The trustees immediately undertook administration of the trust. On December 12, 1968, the trustees filed their first account current, report and petition for compensation for trustees and fees for their attorneys (first account) for the period October 20, 1967 to October 31, 1968, requesting inter alia $125,000 in trustees' fees. The Salvation Army, Braille Institute of America, Inc. and American Heart Association (appellants), three residual beneficiaries of the trust, filed exceptions to the first account.
The conflict centered upon the proper compensation for the services rendered by the trustees in view of the fact that the trustees during the accounting period had overlapping functions. Murphey, Essig and Union Bank were not only co-trustees, but also co-executors of the estate. Essig owned 41.6 percent of the stock of Sky Harbor Ranchos & Estates (Sky Harbor), a land development corporation. Essig and Murphey were officers and directors of Sky Harbor. At the beginning of this period the trust was a minority shareholder in Sky Harbor.
During the year covered by the first account, Murphey, Essig and their attorneys settled a dispute with John Haskell, an officer and shareholder of Sky Harbor and a debtor of the estate. The ensuant agreement of compromise provided in part that all Haskell's debts to the estate be cancelled, that he resign as an officer of the corporation, that his shares be transferred to the trust and that Haskell receive his $25,000 legacy under the will. As a result of the settlement the trust became a 58 percent shareholder in Sky Harbor.
The trial court found, insofar as is here pertinent, that "The Trustees have rendered services to the Trust Estate.... That a just and reasonable fee for the services rendered by said Trustees during said accounting period is the sum of $125,000.00...."
It is agreed by the parties that the services rendered with respect to the "Haskell compromise" should not be solely paid for by the trust, since *59 these services were also performed on behalf of and to the benefit of the estate and Sky Harbor. The issue on appeal then is whether these services were included without apportionment in the award of $125,000 trustees' fees.
(1) "Pursuant to section 1122 of the Probate Code,[[1]] the trustees must be allowed `such compensation for services as the court may deem just and reasonable.' That allowance rests in the sound discretion of the trial court, whose ruling will not be disturbed on appeal in the absence of a manifest showing of abuse. [Citations.] The trustee must present to the trial court satisfactory evidence of the accuracy and propriety of the items in his account [citations]; but the sole question before an appellate court when the fee allowed him is attacked as excessive is whether there is substantial evidence to support the trial court's finding. [Citation.]" (Fn. omitted.) (Estate of McLaughlin (1954) 43 Cal.2d 462, 465-466 [274 P.2d 868].)
(2) Appellants' expert, Otho G. Lord, testified on direct examination that the ordinary services of the trustees performed solely for the benefit of the trust should be valued at three-fifths of one percent of the value of the trust assets.[2] The trustees' expert, Frank H. Schmidt, suggested that the same figure would be proper. Mr. Schmidt testified that the actual value of the trust assets was $21,500,000. On the record before us, then, *60 an application of this agreed rate of three-fifths of one percent would produce, and therefore warrant the trial court finding, a fee of approximately $129,000.
Appellants, however, contend that the services enumerated by the trustees include services performed not solely for the benefit of the estate, namely services performed with respect to the "Haskell compromise." However, appellants' own expert witness testified that three-fifths of one percent of the value of trust assets was the proper basis for ordinary services after being told to exclude from his consideration all services in relation to the settlement of the Haskell dispute.[3] Thus, there is clearly substantial evidence in the record to uphold the award of $125,000 trustees' fees fully excluding all services with respect to the "Haskell compromise." The trial judge who had received extensive testimony as to the nature and extent of the services rendered by the trustees and had before him the voluminous and detailed first account and report of the trustees, as well as their petition for compensation, which extends over 134 pages in the clerk's transcript before us, was warranted in concluding that a reasonable fee for the trustees' services rendered solely for the benefit of the trust was $125,000. (3) While there were obviously divergences in the positions of the parties and in the evidence adduced in support of such positions, the trier of fact was not required to make a selection between the respective testimony of the witnesses on one side or the other in its entirety but could properly "`reject part of the testimony of a witness, though not directly contradicted, and combine the accepted portions with bits of testimony or inferences from the testimony of other witnesses thus weaving a cloth of truth out of selected available material. [Citing cases.]'" (Bruce v. Ullery (1962) 58 Cal.2d 702, 711 [25 Cal. Rptr. 841, 375 P.2d 833]; quoting Nevarov v. Caldwell (1958) 161 Cal. App.2d 762, 777 [327 P.2d 111].)[4]
(4) Appellants further contend that they objected to the proposed finding *61 with respect to the trustees' fees, that they specifically requested that the judge eliminate ambiguity in his finding by stating that all the services were performed for the benefit of the trust and/or allocate what portion of the "Haskell compromise" services were not attributable to the trust, that such finding was on a material issue of fact and that therefore under section 634 of the Code of Civil Procedure as amended,[5] this court on appeal cannot infer such a finding in favor of the prevailing party.
It was impossible for the trial judge to fix a value on the "Haskell compromise" services, since there was no evidence presented by either side which placed a value on these services. There was no need to determine such value, since as we have explained the record supports an award of $125,000 totally excluding these services. Moreover, without inference or implication, the trial court made a plain finding that the services rendered by the trustees to the trust estate were worth $125,000.
The judgment is affirmed.
Wright, C.J., McComb, J., Peters, J., Tobriner, J., Mosk, J., and Burke, J., concurred.
NOTES
[1] Section 1122 of the Probate Code provides in relevant part: "If the will does not specify a trustee's compensation, the trustee shall be entitled to such compensation as may be reasonable under the circumstances and the court may, in the decree of distribution or thereafter, determine such reasonable compensation and, in its discretion, fix or allow a periodic compensation for the trustee or trustees, to continue as long as it may deem proper. Unless the will provides or the trustees agree otherwise, if there are two or more trustees, the compensation shall be apportioned among the trustees according to the services rendered by them respectively. On settlement of each account the court shall allow the testamentary trustee his proper expenses and compensation for services as provided herein."
[2] Mr. Lord testified on direct examination:

"After reviewing the nature of the assets, the amount of cash on hand, the securities, the unimproved real property and the unsecured notes. I have given them a fair fee valuation at 3/5 of 1% for the ordinary services and 3/10 of 1% so far as the cash was concerned...."
He further testified on cross-examination:
"The nature of the land and property, which in my opinion would not normally require any extensive management, was not income property and I did not feel that it justified any figure in excess of the 3/5 of 1%.
".....................
"... the percentage would have to be applied to the average value rather than the sixteen million dollars.
"Q. In other words, if the actual value of the estate appeared to be somewhere around twenty-one million five hundred thousand dollars, that would make some difference in your 
"A. If the average value  well, it would apply to the average value, whatever that figure is."
[3] Appellants' counsel asked Mr. Lord for his opinion as to the reasonable value of the trustees' fees and thereafter for an explanation of the basis of that opinion during which explanation Mr. Lord stated that he had applied a rate of three-fifths of one percent. Immediately prior to eliciting this testimony counsel asked Mr. Lord to "assume each and every allegation of the petition and each and every entry in the accounts, which are an exhibit to the petition, are true, and direct your attention to services rendered by the trustees, the co-trustees under this decree of distribution as described in that petition and account, do you have an opinion as to  but exclude from your consideration the services described therein in relation to the settlement of the Haskell dispute, do you have an opinion as to the reasonable value of the services rendered by the co-trustees?"
[4] Nothing herein contained is intended, nor should it be deemed, to be an approval of the use of a formula consisting of a specified percentage rate applied to the value of a trust's assets, as a method of determining trustees' fees in all instances.
[5] Section 634 of the Code of Civil Procedure provides: "When written findings and conclusions are required, and the court has not made findings as to all facts necessary to support the judgment or a finding on a material issue of fact is ambiguous or conflicting, and the record shows that such omission, ambiguity or conflict was brought to the attention of the trial court either prior to entry of judgment or in conjunction with a motion under Section 657 or 663, it shall not be inferred on appeal or upon a motion under Section 657 or 663 that the trial court found in favor of the prevailing party as to such facts or on such issue."