Filed 3/26/26  Donkin v. Federizo CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| RODNEY E. DONKIN, JR., et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>AILEEN FEDERIZO, as Interim Trustee, etc.,<br><br>    Defendant and Respondent. | B348369<br><br>(Los Angeles County Super. Ct. No. BP109463) |

APPEAL from an order of the Superior Court of Los Angeles County, Ana Maria Luna, Judge.  Affirmed.

Rodney E. Donkin, Jr., in pro. per., for Plaintiff and Appellant Rodney E. Donkin, Jr.

Vicki R. Donkin, in pro. per., for Plaintiff and Appellant Vicki R. Donkin.

Rodnunsky & Associates and Yevgeny L. Belous for Defendant and Respondent.

Appellants Rodney E. Donkin, Jr. (Rodney Jr.) and his wife Vicki R. Donkin appeal from a probate court order regarding Rodney Jr.'s parents' trust. The order approves the most recent accounting (the third account current)[1] filed by the interim trustee, respondent Aileen Federizo. We affirm.

## SELECTED FACTUAL AND PROCEDURAL BACKGROUND[2]

The instant probate litigation spans multiple decades, multiple Court of Appeal decisions, and one California Supreme Court decision. A summary of the trust provisions and the tortuous procedural history of litigation regarding the trust can be found in prior opinions. (See, e.g., *Donkin v. Federizo* (May 30, 2024, B323043) [nonpub. opn.], opn. mod. June 27, 2024 (*Donkin 2024*); *Donkin v. Donkin* (2020) 47 Cal.App.5th 469; *Donkin v. Donkin* (Mar. 29, 2017, B266036) [nonpub. opn.].)

On March 21, 2024, the interim trustee filed the third account current, providing an accounting for the period of November 1, 2021 through December 31, 2023. In it, she requested the court: (1) approve use of trust funds for maintenance of real property in the trust during the accounting period; (2) order payment of fees for work she and her attorney performed during the accounting period; and (3) secure payment

---

[1] The document's full caption is: "Third Account Current and Report of Trustee and: [¶] (1) Petition for Approval Thereof; [¶] (2) Petition for Allowance of Trustee's Fees and for Approval of Payment Thereof; and [¶] (3) Petition for Allowance of Attorneys' Fees and Costs and for Approval of Payment Thereof." (Boldface & full capitalization omitted.)

[2] We provide additional factual background as necessary in the Discussion section below.

of the requested fees with a lien on real property in the trust. The third account current seeks $34,720 in trustee fees and $61,730.90 in attorney fees. It reports that, at the conclusion of the accounting period, less than $13,000 remained in the trust's "liquid reserves" and the market value of real property in the trust was approximately $1,635,000.

In July 2024, appellants filed objections to the third account current, disputing the fee requests and arguing the interim trustee breached her fiduciary duties, causing financial losses to the trust.

On February 10, 2025, the court held an evidentiary hearing. Appellants, their son Christopher Donkin, and the interim trustee testified. The hearing was not transcribed.

On April 14, 2025, in a seven-page written order, the court addressed and overruled appellants' objections and approved the third account current, awarding all fees requested and imposing the requested lien. Appellants appealed.

## DISCUSSION

Appellants challenge the order approving the third account current on the following bases: (1) The order is void for lack of proper notice; (2) The court proceeded with the evidentiary hearing while appeals from related orders of the probate court were pending; (3) The court violated appellants' due process rights by declining to hear their request for reinstatement as trustees before approving the third account current; (4) The court abused its discretion in denying their request for a discovery continuance and conducting the hearing without a court reporter; and (5) The court reversibly erred in overruling appellants' objections.

3

We disagree that the court reversibly erred in any of these ways, each of which we address in turn below.

### A.     Notice

Appellants argue the interim trustee failed to give April and Laura Kim, grandchildren of the trustors and contingent beneficiaries of the trust, proper notice of the third account current.  Appellants contend the order approving it is therefore void.  In *Donkin 2024*, *supra*, B323043, we held that, given the terms of the trust, contingent beneficiaries like April and Laura Kim are not entitled to notice of all actions in the trust litigation.  Only when their rights are "inevitably affected, they are entitled to notice." (*Estate of Reed* (1968) 259 Cal.App.2d 14, 21.)  This was not the case with the petitions at issue in *Donkin 2024*, because "[r]egardless of how the court ruled on the petitions, [the continent beneficiary's] rights under the trust would remain . . . unchanged:  If certain circumstances outlined in the trust come to pass, [he] will be entitled to distribution per those trust provisions.  The challenged orders granting the petitions do not alter how those provisions are applied or what they require." (*Donkin 2024*, *supra*, B323043.)  The same is true of the third account current's effects on contingent beneficiaries like April and Laura Kim, whose rights under the trust are the same as those of the contingent beneficiary grandchild at issue in *Donkin 2024*.

Appellants argue the reasoning in *Donkin 2024* does not apply here, because that decision "addressed sale orders, not accountings."  They argue "[a]n accounting is fundamentally different" (italics omitted) because "[e]very dollar approved in trustee fees, attorney fees, and questionable disbursements is a dollar that will never reach the remainder beneficiaries."  In

4

*Donkin 2024*, we rejected that a reduction in the value of the trust is an effect sufficient to require notice to the contingent beneficiary. We recognized that the order at issue in that appeal, which required the sale of real property in the trust, "might change the amount or value of what [the contingent beneficiary] stands to collect, should the circumstances come to pass that trigger his right to collect directly from the trust, because the [sale of the real property at issue] may reduce the value of the trust corpus. But this [did not] justify requiring notice to [him] as an element of due process." (*Donkin 2024*, *supra*, B323043.) The same is true here. Appellants further argue that *Estate of Lacy* (1975) 54 Cal.App.3d 172 warrants a different result. But in *Donkin 2024*, we disagreed with that decision to the extent it conflicts with our opinion. (*Donkin 2024*, *supra*, B323043.) We stand by our opinion.

### B.     Code of Civil Procedure Section 916 Stay

"[T]he perfecting of an appeal stays proceedings in the trial court upon the . . . order appealed from or upon the matters embraced therein or affected thereby, including enforcement of the . . . order." (Code Civ. Proc., § 916, subd. (a).) Nevertheless, "the trial court may proceed upon any other matter embraced in the action and not affected by the [appealed from] judgment or order." (*Ibid.*; see also *id.*, subd. (b) [providing for jurisdiction to address such unaffected matters].)

When the court approved the third account current on April 14, 2025, two appeals from orders in the trust litigation were pending: one from an order approving the sale of real property known as the Baker property (Baker sale order) and

5

one from a Probate Code section 1310, subdivision (b)[3] order permitting the interim trustee to act on the Baker sale order despite the pending appeal therefrom.[4]  Appellants argue the third account current presents matters "affected by" these appeals (Code Civ. Proc., § 916, subd. (a)), triggering a Code of Civil Procedure section 916 stay and depriving the probate court of jurisdiction to approve the account.  According to appellants, if the appeal from the Baker sale order had resulted in reversal, the interim trustee would not be entitled to fees for her efforts to sell the Baker property—fees she requested in the third account current.

Appellants are incorrect.  A section 1310, subdivision (b) order authorized the interim trustee's efforts to sell the Baker property.  "All acts of [a] fiduciary pursuant to the directions of the court made under [section 1310, subdivision (b)] are valid,

---

[3] Unless otherwise noted, further statutory references are to the Probate Code.

[4] Appellants appealed the Baker sale order in case No. B321793.  On July 3, 2024, the probate court authorized the interim trustee, under section 1310, subdivision (b), to sell the Baker property, notwithstanding the pendency of that appeal. Appellants also appealed the section 1310, subdivision (b) order. We affirmed the Baker sale order on April 28, 2025.  (See *Donkin v. Federizo* (April 28, 2025, B321793) [nonpub. opn.], opn. mod. on denial of rehg. May 23, 2025 (*Donkin 2025*).)  Appellants filed a petition for review of that decision with the California Supreme Court, which the high court did not deny until July 23, 2025, three months after the probate court approved the third account current.  In a September 2025 unpublished opinion, we dismissed appellants' appeal from the section 1310, subdivision (b) order as moot, based on the conclusion of the Baker sale order appeal.

6

irrespective of the result of the appeal." (§ 1310, subd. (b).) That the section 1310, subdivision (b) order was itself the subject of a pending appeal does not change this. (See *ibid.* ["[a]n appeal of the directions made by the court under [section 1310, subdivision (b)] shall not stay these directions"].) The appeals pending at the time of the evidentiary hearing thus did not "affect[ ]" the third account current. (Code Civ. Proc., § 916, subd. (a).) The court did not lack jurisdiction under Code of Civil Procedure section 916 to approve it.

### C. Discovery Continuance and Lack of Transcript

Appellants served the interim trustee with discovery requests on November 25, 2024. The interim trustee provided approximately 2,400 pages of responses "15 days late" on January 9, 2025. At 8:00 a.m. on February 10, 2025—the day of the evidentiary hearing—appellants filed a request for a continuance to allow for additional discovery. Appellants argue the court abused its discretion in denying this continuance. Because appellants waited a full month to make the request and did so less than an hour before the hearing began, we cannot say the court acted outside the scope of its discretion.

Further, the court did not abuse its discretion because it proceeded with the hearing in the absence of a court reporter. Appellants did not file a statement requesting a court-appointed reporter. (See Cal. Rules of Court, rule 2.956(b)(3).) Nor did the court prevent appellants from using a private reporter to transcribe the proceedings. Appellants argue on reply that the court nevertheless should have continued the hearing because their counsel "[made] a request . . . for electronic recording (FTR) of the proceedings due to there being no court reporter" but "[t]he FTR [did] not work, and the proceedings remain[ed]

7

unreported and unrecorded." But they cite no authority for the proposition that appellants were entitled to expect electronic recording of the proceedings. Nor does the record suggest they requested a continuance to provide for transcription of the proceedings.

### D. Appellants' Pending Request to be Reinstated as Trustees

Appellants argue the court violated their due process rights by approving the third account current without first deciding their separate request to be reinstated as trustees. Appellants have challenged other probate court orders on this same basis. We reject the argument now for the same reason we have previously rejected it. (See *Donkin 2025*, *supra*, B321793.) Namely, as we explained in rejecting the argument as a basis for reversing other orders: "[A]ppellants have not sought review of the court's orders continuing the hearing on their reinstatement request or suspending them as trustees in this or any other appeal or writ proceeding; . . . [¶] [a]ppellants are arguing that the court's decision to continue the reinstatement request affected the outcome of [matters decided in the orders on appeal]. Even if this is true, we cannot reach outside the scope of our jurisdiction simply because a ruling appellants have not appealed from may have had some effect on the rulings appellants have appealed from. Thus, we need not address appellants' due process arguments regarding their reinstatement request and/or their suspension as trustees, because these arguments do not provide a basis for reversing the orders on appeal." (Italics omitted.)

### E. Appellants' Objections

Appellants objected to the third account current on the basis that the interim trustee had breached her fiduciary duties during the accounting period and requested improper fees. The interim trustee had the initial burden below to establish the correctness of her accounting with supporting documentation (*Neel v. Barnard* (1944) 24 Cal.2d 406, 420), something appellants do not dispute she did. Having done so, "[t]he trustee is entitled to the benefit of the presumptions of regularity and good faith" (*id.* at p. 421), meaning the appellants bore the burden below of establishing any alleged failure to perform a fiduciary duty. (*LaMonte v. Sanwa Bank California* (1996) 45 Cal.App.4th 509, 517.)

A trial court has broad discretion to determine whether to approve an accounting. We review that overall decision, as well as decisions regarding fee requests, for abuse of discretion. (See *Estate of Hershel* (1959) 168 Cal.App.2d 658, 660; *Estate of Nicholas* (1986) 177 Cal.App.3d 1071, 1088–1090 (*Nicholas*).) We review factual findings following a hearing on a contested accounting for substantial evidence. (*Manson v. Shepherd* (2010) 188 Cal.App.4th 1244, 1264; *Estate of Fain* (1999) 75 Cal.App.4th 973, 987 (*Fain*).) In reviewing for substantial evidence, we must review the evidence in the light most favorable to the finding and affirm if any evidence in the record, contradicted or not, supports it. (*Fain, supra,* at p. 987.) When the court below determines a party has not met his or her burden of proof on an issue, however, substantial evidence review of that determination requires us to examine " 'whether the evidence compels a finding in favor of the appellant as a matter of law.' " (*Dreyer's Grand Ice Cream, Inc. v. County of Kern* (2013) 218 Cal.App.4th 828, 838 (*Dreyer's*).)

With these principles in mind, we address appellants' arguments.

### 1.  *Gardening and Trash Expenses*

Appellants contend the court erred in approving, over appellants' objections, the interim trustee's expenditure of $10,000 for gardening and trash services on real property known as the Comerico property, and $7,800 in expenditures to clear brush from the Baker property.  They argue the leases for these properties, which appellants attached to their objections, require the tenants pay these expenses.  According to appellants, by paying "expenses that the leases assigned to tenants, [the interim trustee] failed to enforce the trust's contractual rights under the leases" and "depleted trust assets" unnecessarily.  (Capitalization omitted.)  This, they contend, breached her fiduciary duties to administer the trust with "reasonable care, skill, and caution" under the circumstances then prevailing (§ 16047, subd. (a)) and "solely in the interest of the beneficiaries" (§ 16002).

The court found there was "no evidence" the tenants were responsible for the work the interim trustee commissioned. Appellants argue the lease agreements "conclusively establish tenant responsibility."  We disagree that these leases alone compel a finding that the tenants were responsible for gardening, brush clearance, and/or trash.  (See *Dreyer's, supra*, 218 Cal.App.4th at p. 838.)  In the Comerico property leases, some of the provisions appellants identify address unrelated tenant responsibilities, such as the responsibility to pay for "utilities and services directly billed to tenant" and "water, sewer, gas, electricity and any other telecom services/internet services." (Capitalization omitted.)  Appellants argue that the tenants were

10

separately billed for trash services, but cite nothing in the record to support this. Other provisions appear to state the tenant is *not* responsible for things like gardening and brush clearance.[5] Still other provisions are ambiguous.[6] And all Comerico property lease agreements include a provision allowing the landlord to pay for maintenance services assigned to the tenant if the tenant fails to perform or commission such services, and to thereafter seek reimbursement from the tenant. The lease on the Baker property *does* require the tenant (Christopher Donkin) to "maintain the garden, landscaping, trees and shrubs," but further provides

---

[5] For example, one lease contains the following, in which the box for option "B" is checked: "Property Operating Expenses:" (A) "Tenant agrees to pay its proportionate share of landlord's estimated monthly property operating expenses, including but not limited to, common area maintenance, . . . based on the ratio of the square footage of the premises to the total square footage of the rentable space in the entire property" or (B) "□ (if checked) paragraph 14 does not apply." (Boldface & capitalization omitted.)

[6] For example, one provision governing "maintenance" notes following an itemized list of duties assigned to landlord that the list "excludes landscaping and plants." (Boldface & capitalization omitted.) The itemized list of duties assigned to the tenant earlier in that provision, however, does not include landscaping and plants. Specifically, the provision reads: (A) "Tenant □ (if checked, landlord) shall professionally maintain the premises including heating, air conditioning, electrical, plumbing and water systems, if any, and keep glass, windows and doors in operable and safe condition." (B) "Landlord OR □ (if checked, tenant) shall maintain the roof, foundation, exterior walls, common areas and (excludes landscaping and plants)." (Boldface & capitalization omitted.)

11

that the "tenant's failure to maintain any item for which tenant is responsible shall give landlord the right to hire someone to perform such maintenance and charge tenant to cover the cost of such maintenance."  (Capitalization omitted.)

The terms of the leases on the Baker and Comerico properties thus do not support that the interim trustee could *never* seek payment for services at issue from the trust.  To the contrary, they reflect that, under certain circumstances, she may or even must do so.  Appellants identify no other evidence on this point.  And in the absence of a transcript from the hearing, we must assume the testimony provided at the hearing described circumstances supporting the court's implicit finding that the trust could be charged for these expenses.  (See *Fain*, *supra*, 75 Cal.App.4th at p. 992 ["[w]here no reporter's transcript has been provided and no error is apparent on the face of the existing appellate record . . . it is presumed that the unreported trial testimony would demonstrate the absence of error"].)

### 2.  *Baker Property Rent and Lien*

Appellants contend the court erred in overruling their objections that the interim trustee breached her duties to keep the Baker property productive.  (See § 16007.)  They point specifically to (1) her not increasing the rent to be charged to Christopher as a holdover tenant on the Baker property, and (2) not accepting an offer to reduce the interest rate on a loan from Vicki's parents, the Yarbers, secured by a lien on that property.  Appellants contest the court's finding that there was "no evidence" of these facts, citing their unsupported representations in a surreply that "[t]he rent is due to be increased to $3,300 per month beginning February 2022" and that "Vicki has spoken with her parents, the Yarbers, and they

12

are willing to reduce the interest rate on their second mortgage to 5 [percent] if it will help keep the home from being sold at this time." Representations in a pleading are not evidence. The record does not support—let alone compel—the options appellants fault the interim trustee for not pursuing.

Moreover, we must assume that the testimony the court heard at the unreported hearing supports that it was either not feasible or not advisable for the interim trustee to pursue the hypothetical avenues for reducing costs appellants identify. (See *Fain, supra,* 75 Cal.App.4th at p. 992.)

### 3. *Kivik Property*

Appellants argue the interim trustee breached her fiduciary duties by selling a real property known as the Kivik property as a "fixer-upper" in 2020, obtaining a below-market price. They argue the Yarbers, who were lienholders on that property as well, had offered in 2018 to pay for improvements on the property so that it would garner a higher price. This transaction is not within the time period covered by the third account current and thus not the proper subject of this appeal.

### 4. *Award of All Requested Fees*

Appellants argue the court erred in that it "rubber-stamp[ed]" the interim trustee's fee requests. According to appellants, because the court approved the requested fee amount in full over appellants' numerous objections, the court must not have conducted a meaningful, itemized review. We are not persuaded. Nor does the authority appellants cite support their argument or even address the issue. (See *Nicholas*, *supra*, 177 Cal.App.3d at p. 1089 [accepting "the trustee's bare assertion that he believes it is in the best interest of the trust" to sell trust

13

property as proof the decision was reasonable "would simply ratify the unexamined decision of the trustee"]; *Estate of Vokal* (1953) 121 Cal.App.2d 252, 261 ["[b]ecause the litigation for which appellant demands compensation was of no benefit to the trust and was caused by no fault of the beneficiaries, the expense thereof must be borne personally by appellant who caused the controversy and incurred the debt"].)

### 5. *Fees for Litigation*

Finally, appellants contend the court abused its discretion by approving fees the interim trustee and her attorney incurred in pursuing what appellants characterize as duplicative and unnecessary litigation. Many of their arguments as to why the litigation was unnecessary are derivative of arguments we reject above, which we will not address again. Appellants also contend the fees were improper because the interim trustee's "own billing records confirm that a substantial percentage of the compensation approved in the . . . third account[ ] is attributable to unnecessary, partisan, and stay-violating Baker Canyon sale litigation and its appeals." (Capitalization omitted.) As discussed, no litigation before the probate court violated a stay Code of Civil Procedure section 916 requires. And the interim trustee has prevailed in all appeals from that litigation. Appellants cite a purported overlap between the interim trustee's 2021 petition seeking court approval to sell the Baker property and Annemarie Donkin's 2016 petition seeking, inter alia, the same relief. They argue this reflects the interim trustee aligning herself with one beneficiary (Annemarie) over others (appellants, who opposed Annemarie's petition), and that the interim trustee's petition was unnecessary and wasteful. But Annemarie filed the 2016 petition in her capacity as then-interim trustee; before the

14

court ruled thereon, it appointed the current interim trustee to replace Annemarie. (*Donkin 2024, supra*, B321793.) Given this context, the overlap appellants identify does not suggest the interim trustee proceeded in a wasteful or partisan manner. It was well within the court's broad discretion with respect to fees to reject this and appellants' other criticism of the litigation below and award the interim trustee fees for her work thereon.

## DISPOSITION

The order is affirmed. Respondent is awarded her costs on appeal.

<u>NOT TO BE PUBLISHED</u>.

ROTHSCHILD, P. J.

We concur:

BENDIX, J.

WEINGART, J.

15