[Civ. No. 32040.   Second Dist., Div. Four.   Nov. 14, 1968.]

NATHANIEL DIAMOND, Plaintiff and Appellant, v. INSURANCE COMPANY OF NORTH AMERICA et al., Defendants and Respondents.

William E. Balter for Plaintiff and Appellant.

Bolton, Groff & Dunne, Mark C. Kane, Cummins, White & Breidenbach and James O. White for Defendants and Respondents.

JEFFERSON, J. — Plaintiff appeals from judgments entered following the sustaining of general demurrers of respondent insurance companies to his first amended complaint. In the complaint plaintiff sought recovery under a replacement cost endorsement which was added to the fire insurance policies issued to him by respondents.[1]

Plaintiff alleges in his first amended complaint that he was the owner of improved real property which was insured by defendants against various perils, including riot and fire; the policies provided that, upon the occurrence of any of the perils insured against, the insured would be paid "actual cash value" for the loss ("actual cash value" constituting the sum resulting by subtracting depreciation from replacement cost); thereafter, an endorsement (set out in the complaint as Exhibit A) was added to each policy providing for, if the insured so elected, replacement cost coverage (or coverage for the actual cost of replacing or repairing the damaged structure); subsequently on August 13, 1965, a loss occurred as the

---

[1] An addition to the respondents, plaintiff sued a third insurance company. That defendant, the New Amsterdam Casualty Company, did not file a demurrer but answered plaintiff's amended complaint. A subsequent motion by the insurance company for a summary judgment (heard before another judge), was denied.

result of the "Watts riots"; defendants paid plaintiff the actual cash value of the loss but refused to pay the replacement cost.

Plaintiff's original complaint (which also pleaded the endorsement by way of exhibit), includes the additional allegation that plaintiff has not replaced or restored the insured property, nor does he presently intend to do so.

The endorsement in question contains paragraphs numbered 1 through 8. The relevant provisions are set out below:

Paragraph 2. "In consideration of the application of the average clause provisions and the premium of the policy to which this endorsement is attached, the provisions of this policy applicable to the property described in paragraph 1 above (the property described includes buildings covered by the policy) are amended to substitute the term 'replacement cost' for the term 'actual cash value' wherever it appears in this policy, including endorsements attached thereto, thereby eliminating any deduction for depreciation subject, however, in all other respects to the provisions of this endorsement and of the policy to which this endorsement is attached."

Paragraph 4. "As respects property to which replacement cost coverage is extended under this endorsement, the insured may elect first to make claim under this policy in accordance with its provisions, disregarding this endorsement, except that the average clause made a part of this policy (changed as provided by paragraph 2 of this endorsement) shall apply irrespective of the election of the insured as to this endorsement; and the insured may make further claim for any additional liability brought about by this endorsement in accordance with its provisions, provided this company is notified in writing within 120 days after loss, of the insured's intent to make such further claims."

Paragraph 6. "This company shall not be liable under this policy, including this endorsement, for any loss:

". . . . . . . . . . .

"(B) As respects property to which replacement cost coverage is extended under this endorsement, unless and until the damaged property is actually repaired or replaced on the same premises with due diligence and dispatch, and, in no event, unless repair or replacement is completed within a reasonable time after such loss."

In sustaining the demurrers the court below concluded: "The replacement cost endorsement extends only to amounts actually and necessarily expended in repairing or replacing

the property and do not extend to any loss unless and until the damaged property is actually repaired or replaced.''

Plaintiff suggests that the language of the replacement cost endorsement is ambiguous; that one reasonable interpretation of the endorsement would permit him to elect to recover the replacement cost for his loss without having to comply with the proviso of paragraph 6(B) that he must first repair or replace the damaged property. He alludes to paragraph 4 and argues that it may be interpreted to give him the right to elect to disregard the endorsement (and the proviso of paragraph 6(b) that he repair or replace), yet make his claim for the replacement cost of his loss under the policy as changed by paragraph 2.

Read as a whole only one reasonable interpretation of the endorsement is possible: The insured is given the right to first make a claim in accordance with the provisions of the policy, disregarding the replacement cost endorsement; this right (set forth in paragraph 4 of the endorsement) was exercised by plaintiff—his complaint contains the allegation that he was paid the actual cash value of the loss; the insured then may make further claim for the additional coverage of being paid the repair or replacement cost of the damaged property without regard to depreciation, but only on the condition (set out in par. 6(B)) that he actually repairs or replaces the damaged property on the same premises.

As indicated above, the language of the instrument, construed by itself, is not reasonably susceptible to the construction placed upon it by plaintiff. However, this does not dispose of the case. The complaint also alleges:

''By the provisions of said endorsements set forth herein, the parties intended, and plaintiff so understood, that the endorsement amended his policy, so that he could recover 'replacement cost' rather than 'actual cash value', and elect to disregard it in all respects (including the necessity of actually replacing, as provided in paragraphs 5 and 6 of said endorsement) except that the 'average clause' would have to continue on a 'replacement cost' basis, rather than an 'actual cash value' basis.''

This allegation brings the case within the rule established in *Pacific Gas & Elec. Co.* v. *G. W. Thomas Drayage & Rigging Co.* (1968) 69 Cal.2d 33 [69 Cal.Rptr. 561, 442 P.2d 641]. In that case the trial court ruled that it would not receive any extrinsic evidence to interpret the contract because the plain language of the agreement was controlling.

In reversing, the Supreme Court said (at pp. 36-37, 39):
"When the court interprets a contract on this basis, it
determines the meaning of the instrument in accordance with
the '. . . extrinsic evidence of the judge's own linguistic edu-
cation and experience.' (3 Corbin on Contracts (1960) ed.)
[1964 Supp. § 579, p. 225, fn. 56].) The exclusion of testi-
mony that might contradict the linguistic background of the
judge reflects a judicial belief in the possibility of perfect
verbal expression. (9 Wigmore on Evidence (3d ed. 1940)
§ 2461, p. 187.) This belief is a remnant of a primitive faith
in the inherent potency [fn. omitted] and inherent meaning
of words [fn. omitted].

██ "The test of admissibility of extrinsic evidence to
explain the meaning of a written instrument is not whether it
appears to the court to be plain and unambiguous on its face,
but whether the offered evidence is relevant to prove a mean-
ing to which the language of the instrument is reasonably
susceptible.

"... . . . . . . . . . . . .
"The fact that the terms of an instrument appear clear to a
judge does not preclude the possibility that the parties chose
the language of the instrument to express different terms.
That possibility is not limited to contracts whose terms have
acquired a particular meaning by trade usage [fn. omitted],
but exists whenever the parties' understanding of the words
used may have differed from the judge's understanding."

██ That decision is controlling here. We cannot antici-
pate what evidence the plaintiff may offer at a trial to estab-
lish the meaning which he has alleged. The mere fact that the
insurance policy has a clear meaning to the judge who ruled
on the demurrer and a clear meaning to the members of this
court will not preclude the plaintiff from offering evidence, if
he has any, to support his allegation that the policy means
what he claims.

The judgments are reversed.

Files, P. J., and Kingsley, J., concurred.