[Civ. No. 33678.   Second Dist., Div. Five.   Sept. 19, 1969.]

Estate of ELSINORE MACHRIS GILLILAND, Deceased. NORMAN J. ESSIG, as Trustee, etc., et al., Petitioners and Respondents, v. GEORGE ESSIG et al., Claimants and Appellants; SALVATION ARMY et al., Claimants and Respondents; GARY FRANK WARD, a Minor, etc., et al., Respondents.

Henry C. Rohr for Claimants and Appellants.

No appearance for Petitioners and Respondents.

Meserve, Mumper & Hughes, Cromwell Warner, Jr., Leo D. Epstein, Simon, Sheridan, Murphey, Thornton & Medvene, William G. Simon, Jr., Poindexter & Barger, William M. Poindexter, Gibson, Dunn & Crutcher and John P. Anderson for Claimants and Respondents.

No appearance for Respondents.

REPPY, J.—The trustees of the testamentary trust created by Elsinore Machris Gilliland, deceased (hereinafter, testatrix), petitioned the superior court for instructions because they were confronted with a dispute between testatrix's nieces and nephews as annuitants (herinafter, annuitants) and certain charities as remainder annuitants and residuary legatees (hereinafter, charities) over the question of whether the annual stipends to annuitants were to be paid in such a way that each annuitant would receive $25,000 annually with any income tax obligation taken care of by the trust.[1]

■ In the trial annuitants, claiming that the terms of the decree of distribution (which were verbatim with the terms of the will and codicil) were ambiguous in the aspect under dispute, proposed to introduce testimony which would show the intent of testatrix in order to dispel the claimed ambiguity.

One witness was sworn and asked one question, at which point an objection was sustained on the ground that the language of the will was not ambiguous and thus extrinsic evidence was not admissible. Counsel for annuitants then made an offer of proof which embodied, in almost quotation form, the substance of what would have been the testimony of each of several proposed witnesses, and the matter was submitted.

The trial court then found that the provisions of the will and codicil with respect to the annual payment to annuitants were unambiguous and called for annuitants to pay their own income taxes and concluded that the trustees should be instructed accordingly. A judgment issued instructing the trustees to distribute annuities without consideration of what income taxes might become payable thereon and not to pay

[1]About the time that a preliminary distribution had been made to the trustees, the court had reserved jurisdiction to later determine whether the trustees were to pay income taxes on the annuities.

any sum out of the trust estate on account of any income tax on any of the annuities. Annuitants appeal.

Relevant language in the testamentary documents is as follows:

(From article IV):

". . . From the net income of the Trust Estate, the Trustee shall pay . . . to each [of the nieces and nephews] the sum of . . . $25,000 . . . per year *before income tax;* and the remaining income shall . . . be paid *in the same manner as above provided* to each [of the named charities].

". . . . . . . . . . .

"If any of said [charities] is not a tax exempt organization for . . . income . . . tax purposes . . . , then its share . . . shall go to . . . the remaining [charities].

". . . . . . . . . . .

"[I]t is my desire that income only of this Trust be distributed to my said nephews and nieces. . . ." (Italics added.)

(From article V):

"From the gross income [of the trust estate] . . . there shall first be paid and discharged all taxes [*except income taxes on income distributed*][2] and . . . expenses incurred in the administration . . . of the Trust Estate . . . ." (Italics added.)

(From article VII):

"[T]here shall be no apportionment of . . . death [taxes] . . . but any . . . such taxes . . . shall be paid from the residue of my estate. . . ."

The witnesses whom counsel for annuitants wanted to call were an old-time servant, a business friend, nephews, nieces and a husband of a niece. The proof offer was that among them they would testify: That testatrix had stated at various times that she was leaving money to her nieces and nephews tax free; that she wanted the bequests to her nieces and nephews to be tax free; that she wanted all of the yearly amounts to be tax free; that she had made a previous gift of $50,000 (to a nephew) tax free and that she wanted all her gifts and monies that she was giving him tax free; that a niece would receive $25,000 per year, taxes free; that she was leaving an amount of money (to a niece) each year, tax free; that she could not give (to a niece) what she would like because the niece could not afford to pay the taxes; that a niece would not have to pay the tax on the gift she was

---

[2]Brackets in original document.

making to her; that she was against taxes; that she did not want charities to get it all. That the husband of a niece had discussed with testatrix the effects of long-term inflation and had shown her an article on the subject. That the attorney for testatrix, after her death, had stated that testatrix had left a nephew $25,000 per year, tax free; that the nieces and nephews were each receiving $25,000 per year, definitely tax free.

The issue was tried March 12, 1968, before the decisions in *Pacific Gas & Elec. Co.* v. *G. W. Thomas Drayage etc. Co.,* (1968) 69 Cal.2d 33 [69 Cal.Rptr. 561, 442 P.2d 641] and *Estate of Russell* (1968) 69 Cal.2d 200 [70 Cal.Rptr. 561, 444 P.2d 353] had come down. The case of *Masterson* v. *Sine,* 68 Cal.2d 222 [65 Cal.Rptr. 545, 436 P.2d 561] had just been decided and had appeared in 68 A.C. pamphlet No. 7, published February 23, 1968. It may not have come to the attention of counsel, or they may not have felt that it presaged the holding in *Estate of Russell, supra.* Thus, the proposed extrinsic evidence summarized above was offered only on the basis that the testamentary documents were ambiguous on their face and that the trial judge should consider it in connection with his task of resolving the alleged ambiguity; and it was not offered to depict part of the circumstances surrounding the execution of the testamentary documents (i.e., mental attitude of testatrix about annuities and income tax obligations thereon) which might indicate that what appeared to be perfectly clear language in the testamentary documents in fact was ambiguous, thus making it proper for the trial court to receive and consider proof, which could be the same extrinsic evidence to resolve discovered ambiguity. (*Estate of Russell, supra,* at pp. 10-13; *Pacific Gas & Elec. Co.* v. *G. W. Thomas Drayage etc. Co., supra,* at p. 37; *Delta Dynamics, Inc.* v. *Arioto,* 69 Cal.2d 525 [72 Cal.Rptr. 785, 446 P.2d 785]; *Diamond* v. *Insurance Co. of North America,* 267 Cal.App.2d 415, 418-419 [72 Cal.Rptr. 862]; *Estate of Balyeat,* 268 Cal.App.2d 556, 561, 563 [74 Cal.Rptr. 120].)

Annuitants, in their opening brief on appeal, filed October 3, 1968, still did not cite *Russell, supra,* nor suggest that a shift in the basis for the offer of proof should be made. However, charities, in their answering brief, do consider *Russell,* but they take the position that the offered proof did not constitute surrounding circumstances which would have to do with the meaning of words used in the testamentary documents

but covered only testamentary intent. Thus, they argue that (despite the new trend in the cited cases) the trial court correctly considered the problem of whether there was an ambiguity in the testamentary documents strictly from their language alone. They urge that such language provides only one reasonable interpretation and that, consequently, it is not ambiguous. (*Estate of Dolsen*, 90 Cal.App.2d 575, 579 [203 P.2d 775].)

In their reply brief, annuitants do marshal *Russell, Pacific Gas & Elec. Co.*, and *Estate of Balyeat, supra.* However, they still appear to concentrate on testamentary intent, asserting that their offer of proof was to show that testatrix "intended . . . annuitants to take their respective annuitants [*sic*] tax free." Nonetheless, we feel that it can be considered that annuitants are saying that the offered proof at least was admissible (even though it was not realized at the time and was not so offered) and should have been considered by the trial judge on the question of whether testamentary language which appeared to be certain of meaning actually was ambiguous. In effect, they are saying: Although absent the surrounding-circumstance item of testatrix's attitude about annuities and income taxes, the language in the testamentary documents might not be reasonably susceptible of two meanings, it becomes so in light of the extrinsic evidence offered. The circumstance that the scrivener took pains to mention the income tax aspect in relation to the annuities indicates that testatrix had the subject on her mind and made some expression about it to her lawyer. The thought could have been that she wanted her annuitants to get their $25,000 in full with the trust paying whatever amount of income taxes there would be in addition to any income tax arising from an annuitant's other income, as she allegedly had put it to her friends and relatives as her plan; or the thought could have been that testatrix now wanted her annuitants to be responsible for whatever income tax each would have to pay by reason of receiving the $25,000 annuity, and since, as alleged, she had indicated earlier to her friends and relatives that income taxes were going to be paid by the trust so that each annuitant could enjoy the $25,000 in full, it would be well not to have the new plan result from silence in the document (which it would by reason of the law) but to express it in words appreciable by her beneficiaries. The phrase "before income taxes" need not be considered unalterably committed to the expression of the second thought described above. It could mean that the trustees first should pay each annuitant $25,000

and then pay the government, at the later time required, whatever income tax such annuitant would have to pay by reason of having received it. The following phrase ''and the remaining income shall be paid in the same manner as above provided to each [of the charities]'' could mean ''before income tax'' too; and since the charities are to be tax exempt, and in light of the use of the singular case in connection with the word ''tax,'' a doubt might be said to be raised as to what or whose income tax is meant throughout this paragraph. Likewise, the testamentary directions to the trustees to first pay from gross income ''all taxes [except income taxes on income distributable][3] and . . . expenses incurred in the . . . administration . . . of the Trust Estate . . .'' is not unalterably committed to the second thought. It could mean that other types of taxes should be paid first and then the income taxes on the annuities could be paid; that the former would be paid from strictly gross income and the latter from some kind of net income.[4]

We are tempted to consider that the proffered evidence was received and in no way controverted and then to examine the testamentary language in light of it. Where there is no conflict in the extrinsic evidence of surrounding circumstances, as they bear on the meaning of the language of an instrument, the appellate court can make the determination whether or not it shows an ambiguity. (*Estate of Russell, supra,* at p. 213.) We would assume that annuitants made their offer as fully and as strongly as they could. If we would then find no ambiguity, the judgment rendered could be affirmed. However, we refrain from the suggested temptation because we recognize that at the time of trial neither side considered the problem from the standpoint of the introduction of extrinsic evidence in aid of determining whether apparently clear language was in fact ambiguous. If this had been known to be the objective, the offer of proof by annuitants might have been

---

[3]Brackets in original document.

[4]Contrary interpretations urged by charities as the only reasonable ones run along these lines:

The phrase ''Before income taxes'' (appearing in article IV) means that annuitants should get their $25,000 each, and then pay their income taxes. Since charities have to be tax exempt, it made it unnecessary to have a similar provision as to them. Since annuitants were to get income only, it is made clear that there was no plan for paying income taxes out of principal, if necessary. The wording ''except taxes on income distributed'' indicates that the trustees were not to pay income taxes. The provision that death taxes were to be paid from the residue indicates that if testatrix did make a statement to the effect that annuity payments or bequests were to be tax free, it was in this sense.

different or broader in scope. It might have included factors in addition to the mental attitude of the testatrix. We feel that the full thrust of the offer of proof (allowing the inference of a state of mind of testatrix strongly in favor of annuities with income taxes paid so that annuitants can enjoy the use of the full amount which testatrix wanted them to have) is relevant to the meaning of the disputed words, and that it (plus other evidence) should be considered by the trial judge to determine if the disputed language is then reasonably susceptible of two or more meanings. In such an event extrinsic evidence could be received to dispel the ambiguity. In the interest of an adjudication based upon enlightened legal principles and full factual disclosures, we feel that the case should be returned to the trial level for renewed consideration.

The judgment therefore is reversed.

Stephens, Acting P. J., and Aiso, J., concurred.