[Nos. B148833, B149842. Second Dist., Div. Five. Oct. 19, 2001.]

UNION BANK OF CALIFORNIA, as Cotrustee, etc., et al., Plaintiffs and Respondents, v.
BRAILLE INSTITUTE OF AMERICA, INC., Defendants and Appellants.

## COUNSEL

Poindexter & Doutré, William M. Poindexter and Robert D. Schwartz for Defendants and Appellants.

Hayes Simpson Greene, Douglas P. Smith; Young & Young, George W. Young; Davis & Whalen and Edmond R. Davis for Plaintiffs and Respondents.

## OPINION

**TURNER, P. J.**—The Braille Institute of America, Inc., American Heart Association, Cancer Research Fund of the Damon Runyon-Walter Winchell

Foundation, Hi-Desert Memorial Hospital, and Salvation Army, beneficiaries under a testamentary trust, have appealed from two adverse orders issued in favor of Union Bank of California (Union Bank), the trustee under a testamentary trust created by a will. After mediation, the beneficiaries and the trustee entered into a settlement agreement which also encompassed the two pending appeals and a separate petition concerning trustee fees. As part of this comprehensive settlement, the beneficiaries and the trustee have agreed that the orders underlying the two pending appeals are to be reversed. This raises the question of whether we can accept the stipulated reversal under the provisions of Code of Civil Procedure[1] section 128, subdivision (a)(8). We conclude we can accept the stipulated reversal consistent with our obligations under section 128, subdivision (a)(8).

The testamentary trust at issue was created by the last will and testament of Elsinore Machris Gilliland dated July 5, 1962, and established by an order of the superior court entered January 12, 1967. Over the years, the testamentary trust has been the subject of substantial appellate litigation which has resulted in four published opinions. (*Estate of Gilliland* (1971) 5 Cal.3d 56 [95 Cal.Rptr. 343, 485 P.2d 543]; *Estate of Gilliland* (1977) 73 Cal.App.3d 515 [140 Cal.Rptr. 795]; *Estate of Gilliland* (1974) 44 Cal.App.3d 32 [118 Cal.Rptr. 447]; *Estate of Gilliland* (1969) 276 Cal.App.2d 258 [80 Cal.Rptr. 876].) The estate has also been the subject of litigation which has resulted in the filing of unpublished opinions. (*Damon Runyon-Walter Winchell Foundation v. Essig* (Dec. 22, 1997, B109113); *The Salvation Army v. Essig* (Nov. 6, 1997, B098531).)

In the present matter, on May 25, 2000, Norman J. Essig, a cotrustee as well as a beneficiary under the trust, filed a first amended petition for instructions concerning the appointment of successor cotrustees. The first amended petition sought the appointment of two individuals as cotrustees. On June 12, 2000, several of the beneficiaries filed an objection to the first amended petition for instructions concerning the appointment of successor cotrustees. On January 11, 2001, the petition for instructions concerning the appointment of successor cotrustees was granted in part and denied in part. The January 11, 2001, order states in relevant part: "1. The Trust clearly mandates the appointment of successor Trustees, forthwith upon determination of a vacancy. [¶] 2. The Petition is granted for the appointment of one successor Trustee, and is granted for the appointment of a second successor Trustee as and when there is a vacancy in the office of the current Co-Trustee, Norman J. Essig. [¶] 3. The appointment of both individuals nominated as successor Co-Trustees by Norman J. Essig in the Petition is denied

---

[1] Unless otherwise indicated, all statutory references are to the Code of Civil Procedure.

with prejudice, and a subsequent Petition for Appointment of Successor Trustees is ordered to be filed by Norman J. Essig within 60 days, at which time the Court may or may not consider the issue of bond, in its discretion." On March 9, 2001, the beneficiaries filed a notice of appeal from the January 11, 2001, order concerning the appointment of successor trustees.

On August 22, 2000, two of the beneficiaries, the American Heart Association and the Braille Institute of America, filed a petition to modify the trust pursuant to Probate Code section 15409. On or about September 21, 2000, two of the cotrustees, Mr. Essig and Union Bank, filed an opposition to the petition to modify the trust. On March 14, 2001, the petition to modify the trust was denied. On May 7, 2001, the beneficiaries appealed from the March 14, 2001, denial of the petition to modify the trust. These two appeals, which have been consolidated, are the subject of the present stipulation to reverse the orders of January 11 and March 14, 2001.

While the foregoing petitions were being litigated, decided, and appealed, the trustee filed a third petition. The third petition sought an order approving the trustee's compensation and for additional instructions. The initial hearing on the petition to approve the trustee's compensation and for additional instructions was held on May 17, 2001. On that day, the trial court ordered the parties to mediation and directed that the hearing on the third petition be held on August 6, 2001. On June 12, 2001, a mediation was held which resulted in a comprehensive settlement. The mediator was Susan T. House. The June 12, 2001, agreement was designed to resolve the following disputes: the March 9, 2001, appeal from the January 11, 2001, order denying and granting in part the petition for instructions concerning the appointment of successor cotrustees; the May 7, 2001, appeal of the order denying the March 14, 2001, petition to modify the trust; and the third petition concerning the trustee's compensation. The stipulation resolved a number of disputes between the trustee and the beneficiaries. Additionally, the beneficiaries and the trustee agreed to cooperate so as to set aside the January 11 and March 14, 2001, orders relating to the appointment of successor cotrustees and modification of the trust respectively.

On July 3, 2001, the trustee filed a petition to approve the May 7, 2001, mediated settlement and for instructions pursuant to Probate Code sections 1310, 15681, 15682, and 17200. On August 17, 2001, the trial court issued its written order approving the settlement. The August 17, 2001, order contains extensive directions concerning the compensation of the trustee and other trust matters. The August 17, 2001, order notes that the portion of the mediated agreement which sought to set aside the January 11 and March 14,

2001, orders relating to the appointment of successor cotrustees and modification of the trust respectively would have to be submitted to the Court of Appeal. The August 17, 2001, order states in part: "1. The Agreement and the settlement set forth therein is fair, just, and reasonable and is in the best interests of the beneficiaries of the trust . . . and of the trust estate. The execution of the Agreement by [the trustee] is approved. [¶] 2. Contingent upon the Court of Appeal vacating the appealed orders consistent with the settlement, the Agreement and the settlement set forth therein is approved, and is in full force and effect." On August 31, 2001, the parties filed a written stipulation with this court. The parties have stipulated to reversal of the January 11 and March 14, 2001, orders; upon remand, denial of the two petitions which resulted in the January 11 and March 14, 2001, orders; immediate issuance of the remittitur; and each party bearing their own costs on appeal.

■ In order for us to accept the partial stipulation to reverse the January 11 and March 14, 2001, orders relating to the appointment of successor cotrustees and modification of the trust respectively, we must comply with section 128, subdivision (a)(8), which states in relevant part: "(a) Every court shall have the power to do all of the following: [¶] . . . [¶] (8) To amend and control its process and orders so as to make them conform to law and justice. An appellate court shall not reverse or vacate a duly entered judgment upon an agreement or stipulation of the parties unless the court finds both of the following: [¶] (A) There is no reasonable possibility that the interests of nonparties or the public will be adversely affected by the reversal. [¶] (B) The reasons of the parties for requesting reversal outweigh the erosion of public trust that may result from the nullification of a judgment and the risk that the availability of stipulated reversal will reduce the incentive for pretrial settlement." Thus, in order for a stipulated reversal to be accepted, an appellate court must find there is no reasonable possibility that the interests of nonparties or the public will be adversely affected; the reasons for the requested reversal do not outweigh the erosion of public trust resulting from such an action; and the stipulated reversal does not reduce the incentive for pretrial settlement.

In the decision of *In re Rashad H.* (2000) 78 Cal.App.4th 376, 380-382 [92 Cal.Rptr.2d 723], we applied Code of Civil Procedure section 128, subdivision (a)(8) and approved a stipulated reversal in a dependency matter. In *Rashad H.*, the parent was not given proper notice of a Welfare and Institutions Code section 366.26 hearing. After the opening brief was filed, the Los Angeles County Department of Children and Family Services agreed that the Welfare and Institutions Code section 366.26 parental rights termination

order must be reversed. We noted that requests for approval of stipulated reversals pursuant to Code of Civil Procedure section 128, subdivision (a)(8) must be evaluated on a "case-by-case basis." (*In re Rashad H., supra,* at p. 381.) As required by Code of Civil Procedure section 128, subdivision (a)(8)(A), we first reviewed whether the stipulated reversal would adversely affect the rights of the public or nonparties. In our analysis, we noted that judicial error had been committed, parental rights had been terminated without the required notice, and reversal was mandated. We concluded that the stipulation in fact advanced the rights of the potential adoptive parents who were nonparties to the appeal by speeding up the final legal determination of the parental termination rights issue. (*In re Rashad H., supra,* at pp. 380-381.) As to the requirements of Code of Civil Procedure section 128, subdivision (a)(8)(B), we noted: there was no possibility of the erosion of public trust because reversal was inevitable; the public interest was advanced by a settlement premised upon judicial error; and the risk of the availability of a stipulated reversal did not reduce the incentive for pretrial settlement because the judgment would be reversed anyway because of judicial error. (*In re Rashad H., supra,* at p. 381.)

We examine the stipulation in the present case utilizing the foregoing principles. First, there is no evidence the settlement will adversely affect the interests of nonparties or the public. (§ 128, subd. (a)(8)(A).) There is no evidence of any interests on the part of nonparties. The public interest is advanced because disputes resulting in two appeals and one pending probate petition will be resolved without further expense and each of the beneficiaries, which are charities, will no longer be spending moneys in litigation on these three matters. The beneficiaries will be spending moneys on charitable causes, not legal fees. Further, this case does not involve any allegations of corruption or conduct which would be reportable to licensing and disciplinary agencies. This is a good faith dispute between a trustee and charitable beneficiaries which has been resolved utilizing the mediation process.

The second requirement in section 128, subdivision (a)(8)(B), "[t]he reasons of the parties for requesting reversal outweigh the erosion of public trust that may result from the nullification of a judgment," permits us to accept the stipulated reversal. As previously noted, on August 17, 2001, the trial court found after a noticed hearing on the July 3, 2001, petition to approve the mediated settlement, that the parties' agreement was "fair, just, and reasonable and is in the best interests of the beneficiaries of the trust . . . and of the trust estate." We fail to see how any erosion of public trust would arise from a judicially approved reversal of two probate court orders which ultimately serve the interests of the beneficiaries which are charities,

the trust, and the public. In other words, there has been an explicit judicial approval of the mediated settlement after notice to all of the parties. Additionally, there has been a settlement through the mediation process, conducted pursuant to an order of the trial court, of the petition concerning trustee fees. No erosion of public trust will occur if we accept the stipulation.

As to the third factor, "the risk that the availability of stipulated reversal will reduce the incentive for pretrial settlement," it does not warrant rejection of the stipulation. (§ 128, subd. (a)(8)(B).) There is no evidence that the availability of the stipulated reversal in this case would reduce the incentive for pretrial settlement. In fact, the settlement in this case occurred in conjunction with the resolution of the petition concerning trustee's fees. That third petition had been set for trial. The mediated agreement in the present case was reached prior to the trial on the third petition as part of a pretrial settlement.

Now the present case does differ from *Rashad H.* in one aspect. *Rashad H.* involved a scenario where identifiable reversible judicial error had occurred; the father had not received notice of the parental termination rights hearing. Unlike the parties in *Rashad H.*, here the litigants have *not* demonstrated that reversible error occurred in connection with the January 11 and March 14, 2001, orders relating to the appointment of successor cotrustees and modification of the trust respectively. Directly relevant to our analysis in *Rashad H.* was the agreement of the parties and our own independent review of the record which indicated that reversible judicial error had occurred. (*In re Rashad H., supra,* 78 Cal.App.4th at p. 381.) But the absence of reversible error is not a bar to the acceptance of a stipulated reversal so long as the appellate court makes the three findings listed in section 128, subdivision (a)(8). The Legislature articulated three necessary findings that must be present in order for an appellate court to accept a stipulated reversal. The Legislature did not require the presence of reversible error in order for an appellate court to accept a stipulated reversal. Further, the Legislature did not disapprove of the public policy favoring settlement of litigation disputes, even those pending on appeal.

Surely, the presence of reversible error is pertinent to the first two section 128, subdivision (a)(8) factors. For example, section 128, subdivision (a)(8)(A) refers to the interests of the public being adversely affected by the stipulated reversal. If there is reversible error, prompt resolution of the appeal without the considerable expense to the parties of briefing and taxpayer incurred costs of the internal decisionmaking process within the court certainly serves the public interest. Also, section 128, subdivision

(a)(8)(B) requires an appellate court to conclude that the reasons for the reversal outweigh the erosion of public trust that may result from the nullification of a judgment before accepting a stipulated reversal. If there is reversible error present, whatever public trust is eroded when a judgment is reversed, the purported erosion of our citizens' faith in the courts is materially mitigated when the reversal would have occurred in any event and the parties agree to accept the inevitable.

However, public trust in the courts is also enhanced by settlements of pending appeals and related litigation. An appellate attorney has an obligation, if possible, to settle disputes in a fashion which protects a client's interests. (*McClure v. McClure* (1893) 100 Cal. 339, 343 [34 P. 822] ["Not only will such [settlement] agreements, when there is no fraud, be sustained by the courts, but they are highly favored as productive of peace and goodwill in the community, and reducing the expense and persistency of litigation"]; *Small v. Hall's Furniture Defined Benefit Pension Plan* (2000) 79 Cal.App.4th 648, 650 [94 Cal.Rptr.2d 313] ["One of the functions of a lawyer is to limit or even end litigation in an appropriate case"].) When lawyers responsibly settle litigation, public trust in the courts is advanced. Hence, in exercising discretion on a case-by-case basis in evaluating whether the three factors in section 128, subdivision (a)(8) are present, it is relevant that reversible error occurred but it is not a prerequisite to the judicial acceptance of a stipulated reversal in a case such as this which does not involve collateral licensing or discipline ramifications.

Pursuant to the parties' stipulation, the January 11 and March 14, 2001, orders relating to the appointment of successor cotrustees and modification of the trust respectively are reversed. The petitions which gave rise to the January 11 and March 14, 2001, orders are denied. The remittitur is to issue forthwith. All parties are to bear their own costs incurred on appeal.

Armstrong, J., and Willhite, J.,* concurred.

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.