Filed 5/27/14  Marriage of Lee and Wong CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re Marriage of CRYSTAL LEE and WINSTON WONG, JR. | |
| CRYSTAL LEE, | G047849 |
| Appellant, | (Super. Ct. No. 12D000102) |
| v. | O P I N I O N |
| WINSTON WONG, JR., | |
| Respondent. | |

Appeal from judgments of the Superior Court of Orange County, Cheri T. Pham, Judge.  Reversed and remanded with directions pursuant to Code of Civil Procedure section 128, subdivision (a)(8).

Trope and Trope, Thomas Paine Dunlap, Ronald A. Rale and Soo J. Kim for Appellant.

Honey Kessler Amado; Kristin L. Smith; Snell & Wilmer and Richard A. Derevan for Respondent.

\*          \*          \*

THE COURT:<sup>*</sup>

This appeal involves competing actions in California and Taiwan to dissolve the marriage of Crystal Lee and Winston Wong. The couple reached a settlement and executed a "Deal Memo" outlining the terms of their settlement. They agreed to dismiss both actions and dissolve their marriage by registering a "Divorce Agreement" with the Taiwanese government. When the couple could not agree on the Divorce Agreement's final form, Wong moved to bifurcate marital status in the California action and have the court enter a judgment dissolving the marriage while reserving jurisdiction over all other issues. The trial court granted that motion and entered two judgments, one dissolving the marriage and a second entering the terms of the Deal Memo as a judgment on reserved issues. Lee appealed, arguing the Deal memo required a dismissal in California, not a judgment.

While her appeal from those judgments was pending, Lee and Wong reached a new settlement that dissolved their marriage in Taiwan as they originally agreed and also resolved all other issues relating to custody, support, and property division. As part of that settlement, Lee and Wong have filed a stipulated request to reverse the trial court's judgments and remand for the court to dismiss the California action to avoid any conflict with the dissolution of the marriage in Taiwan.

We grant the request. We have examined the joint application and the record on appeal, and determine the stipulated reversal will not adversely affect the interests of any nonparties or the public, will not erode public trust in the courts, and will not reduce the incentive for pretrial settlement. (Code Civ. Proc., § 128, subd. (a)(8).)[1] This is a private family dispute between Taiwanese residents that arose when they were unable to carry out the terms of their original settlement. The stipulated reversal not only

---

<sup>*</sup>    Before O'Leary, P.J., Aronson, J., and Thompson, J.

[1]    All statutory references are to the Code of Civil Procedure

2

allows the parties to complete their original settlement, but comports with this state's strong public policy to promote settlement and preserve family harmony because it allows the parties to dissolve their marriage and provide for their daughter on terms agreeable to both of them.

I

FACTS AND PROCEDURAL HISTORY

Lee and Wong married in January 2010 in Taipei, Taiwan, and their marriage was registered in Taiwan. Wong is a citizen of Singapore, but resides in Taiwan. Lee is an American citizen and has spent a significant part of her life in the United States. She has family in Taiwan and became a Taiwanese citizen in 2009. The couple lived in Taiwan during their marriage and they have a daughter, Eli, who was born in Taiwan in June 2010.

In July 2011, Lee brought Eli to California to visit relatives and to give Lee and Wong time to decide whether they wanted to remain married. A few weeks later, Lee informed Wong she did not intend to return to Taiwan. She filed a petition for legal separation with the Orange County Superior Court in January 2012, and Wong responded by filing a petition to dissolve the couple's marriage in Taiwan. In April 2012, Wong answered Lee's petition for legal separation and asked the Orange County Superior Court to dissolve the couple's marriage.

In May 2012, the couple reached an agreement to have their marriage dissolved in Taiwan. The Deal Memo they signed required Lee to return with Eli to Taipei, Taiwan, by June 30, 2012, and Lee and Wong to dismiss all proceedings in both California and Taiwan before Lee boarded the plane to return to Taiwan. The Deal Memo also required Lee and Wong to work with their attorneys in Taiwan to finalize a Divorce Agreement that would be registered with the Taiwanese government to dissolve the couple's marriage.

The Deal Memo required the Divorce Agreement to "contain, at a minimum, the following terms:" (1) Wong shall establish an irrevocable trust and fund it with approximately $3.4 million for Eli's educational, health, and living expenses; (2) Lee "shall be allowed to live" with Eli in the couple's residence in Taipei, Taiwan, and the irrevocable trust shall pay "all expenses associated with said residence"; (3) Lee and Wong shall have joint legal and physical custody of Eli with Lee as the primary parent; (4) Eli shall live primarily in Taiwan to be close to her maternal and paternal families; and (5) Wong "shall have frequent and continuing contact with Eli as agreed by both Parties." Finally, the Deal Memo stated, "The Parties shall obtain a judgment in Taiwan, that mirrors all terms and provisions of this Deal Memo."

As agreed, Lee returned to Taiwan with Eli in late June 2012. Wong, however, refused to dismiss either the California or Taiwanese proceedings because Lee would not agree to the final form of the Divorce Agreement that was required to dissolve the couple's marriage in Taiwan.[2] As the couple continued to negotiate the Divorce Agreement's terms, they each obtained an order from the Taiwanese court prohibiting the other from leaving Taiwan with Eli.

In September 2012, Lee filed a motion to dismiss in the California action based on section 664.6 and the Deal Memo term requiring Wong to dismiss all actions. In the alternative, Lee sought to dismiss the California action based on forum non conveniens because she, Wong, and Eli were residing in Taiwan and neither she nor Wong could leave Taiwan with Eli. Wong responded by filing a motion to bifurcate the issue of marital status and asked the California court to enter a judgment dissolving the couple's marriage while reserving jurisdiction over all other issues.

---

[2] Lee could not dismiss the California action without Wong's consent because his answer sought affirmative relief in the form of a judgment dissolving the couple's marriage.

4

In November 2012, the trial court denied Lee's motion to dismiss, but granted Wong's motion to bifurcate. The court then entered a judgment on status only dissolving the couple's marriage and a second judgment on reserved issues ordering child custody and visitation, child support, spousal support, and property division as set forth in the Deal Memo. The court also reserved jurisdiction over all other issues. Lee timely appealed from both judgments, arguing the Deal Memo required the court to dismiss the action rather than enter a judgment dissolving the couple's marriage or making any other orders.

After Lee and Wong completed briefing in this court, we issued an order requesting supplemental briefs addressing (1) whether the Deal Memo was an enforceable settlement agreement under section 664.6, and (2) whether the trial court applied the proper legal standards in denying Lee's motion to dismiss based on forum non conveniens. Before Lee and Wong completed their supplemental briefing they reached a new settlement dissolving their marriage in Taiwan as they originally agreed and resolving all issues relating to custody, support, and property division. As part of that settlement, Lee and Wong have jointly requested that we reverse the trial court's judgments and remand for the court to dismiss the action with prejudice to avoid any conflict with the dissolution of the marriage in Taiwan.

II

DISCUSSION

Section 128, subdivision (a)(8), prohibits us from reversing the trial court's judgments based on the parties' stipulation *unless* we make the following findings: (1) "There is no reasonable possibility that the interests of nonparties or the public will be adversely affected by the reversal"; (2) "The reasons of the parties for requesting reversal outweigh the erosion of public trust that may result from the nullification of a judgment"; and (3) "The reasons of the parties for requesting reversal outweigh . . . the risk that the

5

availability of stipulated reversal will reduce the incentive for pretrial settlement." (§ 128, subd. (a)(8).) Whether the facts support each of these findings must be determined on a "'case-by-case basis.'" (*Union Bank of California v. Braille Inst. of America, Inc.* (2001) 92 Cal.App.4th 1324, 1329.) To grant the parties' request for a stipulated reversal, we need not determine the trial court committed reversible error provided the record supports each of these three findings. (*Id.* at p. 1330.) We find that it does.

First, there is no evidence the stipulated reversal of the judgments will adversely affect the interests of nonparties or the public. This is a private family dispute between Lee and Wong concerning how and where their marriage should be dissolved. The only nonparty potentially affected by the reversal is their daughter Eli, but Lee and Wong agree their marriage should be dissolved, their settlement establishes a substantial fund to provide for Eli's needs, and their agreement on custody allows Lee, Wong, and their extended families to remain active in Eli's life. There is no indication the reversal will have an adverse impact on Eli.

Moreover, the stipulated reversal advances the public interest because it allows Lee and Wong to dissolve their marriage on their own terms rather than terms imposed by the court. Marital settlement agreements "occupy a favored position" in California law and courts are reluctant to disturb them absent some evidence one spouse obtained an unfair advantage over the other. (*In re Marriage of Egedi* (2001) 88 Cal.App.4th 17, 22.) Here, there is no evidence or claim that one spouse exercised an unfair advantage over the other. We also must note California's interest in Lee and Wong's marriage is attenuated at best because the couple was married in Taiwan, lived in Taiwan for most of their marriage, and returned to Taiwan before the trial court entered its judgments.

Second, little or no erosion of public trust results from nullifying the judgments because they were based on Lee and Wong's original settlement. Indeed, the

6

trial court did not enter the judgments based on its resolution of conflicts in the evidence regarding the couple's standard of living, the needs of Eli, and other relevant considerations. Rather, the court merely dissolved the couple's marriage, entered some of the original settlement's terms as a judgment, and reserved jurisdiction to resolve any remaining future issues. Lee and Wong now seek to have the trial court's judgments reversed because they have resolved their disagreements concerning the original agreement's terms and now want to have their marriage dissolved in Taiwan as they originally agreed. On the facts presented, we fail to see how nullifying the judgments could erode public trust.

Finally, we see no risk that approving the stipulated reversal of the judgments in this case will reduce the incentive for pretrial settlement. Lee and Wong negotiated what they thought was a pretrial settlement. Unfortunately, some of the terms were not as clear as they originally thought and a dispute arose over what some terms required. While the dispute over those terms was pending in this court, Lee and Wong resolved their dispute over the original settlement's terms and reached a new settlement resolving all issues. Reversing the underlying judgments will not reduce the incentive for pretrial settlement because doing so actually helps effectuate the original pretrial settlement Lee and Wong reached. (See *Hardisty v. Hinton & Alfert* (2004) 124 Cal.App.4th 999, 1008 ["the risk that the availability of stipulated reversal will reduce the incentive for pretrial settlement cannot be discounted *unless* it is shown that the parties seriously pursued settlement prior to trial or that the delay in seeking or reaching settlement is explained by a posttrial development that could not reasonably have been anticipated prior to trial" (italics added)].)

## II

### DISPOSITION

Pursuant to the parties' stipulation, the judgments are reversed. By accepting the parties' stipulation, we do not rule on the merits of the issues raised in the appeal, but restore jurisdiction to the trial court so that it may effectuate the settlement by dismissing the action and allowing the parties' marriage to be dissolved in Taiwan, where they were married and now reside. The parties shall bear their own costs on appeal.