Filed 2/18/22  Withrow v. B.L. CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| ROBERT WITHROW, as Director, etc., | F082264 |
| Plaintiff and Respondent, | (Super. Ct. No. 20CEPR01011) |
| v. | |
| B.L, an Incompetent Person, etc., | **OPINION** |
| Defendant and Appellant. | |

### THE COURT*

APPEAL from an order of the Superior Court of Fresno County.  Debra J. Kazanjian, Judge.

Conness A. Thompson, for Defendant and Appellant.

Rob Bonta, Attorney General, Cheryl L. Feiner, Assistant Attorney General, Gregory D. Brown and Dane C. Barca, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*       Before Poochigian, Acting P.J., Detjen, J. and Snauffer, J.

Appellant B.L. is involuntarily committed to the State Department of State Hospitals at Coalinga State Hospital (CSH). The medical director of CSH obtained an order authorizing a necessary medical procedure be performed upon B.L. based on a finding that B.L. lacked the mental capacity to give informed consent. B.L. appeals that order. The parties now agree that the trial court's order should be vacated because the medical procedure is no longer medically necessary and will not be performed upon B.L. pursuant to the order. We grant the parties' joint motion, vacating the trial court's order. Because we grant the relief B.L. seeks pursuant to the parties' joint motion, we do not reach the merits of B.L.'s appeal and we dismiss the appeal as moot.

## PROCEDURAL AND FACTUAL SUMMARY

On November 10, 2020, Robert Withrow, M.D., Medical Director of CSH, filed a petition seeking authorization to perform a medical treatment and to consent on B.L.'s behalf. (Prob. Code, § 3200 et seq.) The petition alleged that B.L. has been committed to CSH pursuant to Penal Code section 2972 since March 6, 2014. It further alleged that he was diagnosed with delusional disorder, resulting in him being unable to understand the nature of his medical and psychiatric conditions. In addition to B.L.'s mental illness, his treating physician opined that he suffered from "iron deficiency, anemia, possible upper or lower gastrointestinal bleeding, and constipation." His treating physician determined that B.L. required a colonoscopy, an endoscopy, and prescription medication, but based on his mental illness, B.L. could not consent to the required procedures.

On December 16, 2020, the trial court held a hearing at which B.L.'s treating physician and treating psychiatrist testified on behalf of Withrow. His treating physician testified that B.L.'s hemoglobin count was, at various points, dangerously low which could indicate a life-threatening condition. Without conducting an endoscopy and colonoscopy, B.L.'s treating physician could not provide an accurate diagnosis of B.L.'s condition. B.L.'s treating physician and treating psychiatrist both described that B.L. did

2

not have the mental capacity to understand his medical and mental health conditions or appreciate the risk of not being treated for his medical problems.

B.L. testified on his own behalf. He explained that his medical conditions were resolved by a regimen of prunes and prayer. His hemoglobin level was now in a normal range and he needed no diagnostic procedures. He believed that the staff of CSH recommended a colonoscopy because they wanted to rape him.

After hearing argument, the trial court concluded that B.L. faced a potentially life-threatening medical condition and required the diagnostic procedures and treatment described in the petition, but lacked the mental capacity to give informed consent. It therefore authorized Withrow to consent on B.L.'s behalf to a colonoscopy, endoscopy, any required pre-procedure blood draws, anesthesia, and administration of medication in connection with an iron deficiency.

On January 4, 2021, B.L. filed a notice of appeal.

On February 1, 2022, the parties filed a joint motion with this court to vacate the trial court's order, agreeing that the order should not be enforced because the ordered diagnostic procedures and medical treatment are no longer indicated. The parties filed a declaration in support of the motion by B.L.'s treating physician, stating that "the iron levels in [B.L.'s] blood have stabilized and have since returned to normal levels …." For that reason, the diagnostic procedures and treatments ordered are no longer medically indicated and B.L. will not be given those treatments unless he consents, or they are later ordered based on a new finding of medical necessity.

## DISCUSSION

The trial court ordered a colonoscopy, an endoscopy, and other related treatments be performed. None of those procedures or treatments have been performed and the parties agree that they are no longer medically indicated.

The parties agree, as do we, that two showings must be made in order for this court to summarily reverse the trial court's lawful civil order by the parties' stipulation

3

"so as to … conform to law and justice":  (1) that there be "no reasonable possibility that the interests of nonparties or the public will be adversely affected by the reversal[,]" and (2) that "[t]he reasons of the parties for requesting reversal outweigh the erosion of public trust that may result from the nullification of a judgment and the risk that the availability of stipulated reversal will reduce the incentive for pretrial settlement." (Code Civ. Proc., § 128, subd. (a)(8)(A)–(B).)

As to the first issue, because the diagnostic procedures and treatments ordered by the court are no longer medically necessary, there is no reasonable possibility that the public or nonparties will be adversely affected by reversal of the order.  No benefit arises from performing unnecessary medical procedures and vacating an order requiring such procedures causes no harm.

As to the second issue, no public trust is garnered by maintaining an order that a medical procedure be performed after it is determined to be medically unnecessary. Similarly, public trust is not lost by heeding the medical advice of a committed person's treating physician regarding the committed person's medical treatment, especially when it aligns with the committed person's wishes.  If anything, the public's trust in our courts should be bolstered by the knowledge that we do not blindly adhere to orders which no longer serve a purpose.  Further, public trust in the courts is enhanced, not eroded, when parties agree to resolve their disputes without further litigation, resorting to the courts only for the resolution of the merits of a case.  (See *Union Bank of California v. Braille Inst. of America, Inc.* (2001) 92 Cal.App.4th 1324, 1331.)

Vacating the order compelling medical procedures to conform to justice would not harm any party or nonparty and would not tend to erode public trust in the courts.

In granting the parties' joint motion, we grant B.L. all the relief he sought in his appeal.  As such, we do not reach the merits of the appeal and we dismiss the appeal as moot.

4

## **DISPOSITION**

The parties' joint motion is granted and the order is vacated. B.L.'s appeal is dismissed as moot. In the interest of justice, all parties shall bear their own costs on appeal.