Filed 3/30/23  In re J.A. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re J.A., a Person Coming Under the Juvenile Court Law. | H050310 (Santa Clara County Super. Ct. No. 21JD026965) |
| SANTA CLARA COUNTY DEPARTMENT OF FAMILY AND CHILDREN'S SERVICES, Plaintiff and Respondent, v. J.A., Defendant and Appellant. | |

**MEMORANDUM OPINION[1]**

Appellant J.A. (Father) appeals from an order terminating his parental rights as to J.A.[2]  Respondent Santa Clara County Department of Family and Children's Services (Department) and Father jointly move for a summary reversal of the order.  The parties agree that the juvenile court failed to comply with the Indian Child Welfare Act (ICWA), and request that we remand the matter to the juvenile court for the limited purpose of

---

[1] We resolve this case by memorandum opinion under California Standards of Judicial Administration, section 8.1.  (See also *People v. Garcia* (2002) 97 Cal.App.4th 847, 853-855.)

[2] Because father and child have the same initials, we refer to appellant as Father and the child as J.A. for clarity.

ensuring compliance. We grant the motion and reverse the order pursuant to the stipulation of the parties.

After J.A tested positive for methamphetamine at birth, the Department filed an application for a protective custody warrant pursuant to section 340 of the Welfare and Institutions Code.[3] In the application, the Department represented that it "has not inquired about Indian heritage because . . . the mother declined to answer questions related to ICWA." The juvenile court granted the Department's application and issued an order for protective custody. The Department filed a petition pursuant to section 300, subdivision (b)(1), alleging that J.A. was at risk of serious physical harm due to mother's untreated substance abuse issues.[4]

At the initiation of the proceedings, the Department interviewed Father to ascertain possible Native American ancestry. Father identified his ethnicity as "Hispanic and Chumash Indian." He reported that he was "a quarter Chumash" and that his mother (J.A.'s paternal grandmother) was "half Chumash." Father stated that he was "not an enrolled member of the tribe," but that his paternal great-grandfather was a member. Father also believed that his mother had received some form of payment from the Chumash tribe, though he was not certain whether she was an enrolled member. Based on its interview with Father, the Department determined that there was reason to believe that J.A. was an Indian child.

The Department made additional inquiries into J.A.'s possible Native American heritage. The Department asked J.A.'s paternal grandmother for a complete family lineage to identify possible Chumash ancestry. The Department also sent a letter to the Santa Ynez Band of Chumash Indians, inquiring whether J.A. was a member or eligible

---

[3] All statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[4] The juvenile court terminated mother's parental rights at the same time it terminated Father's. Mother was not present at the hearing where the order was entered and did not file an appeal from the court's order.

2

for membership in the tribe. A representative of the tribe responded and confirmed that J.A. was not a member. The Department also contacted other members of J.A.'s family, including the maternal grandmother and J.A.'s presumed father, A.D.[5] Both denied Native American ancestry. The Department's inquiries did not include contacting the Bureau of Indian Affairs (BIA) or the California Department of Social Services (CDSS).

At the jurisdiction/disposition hearing, the juvenile court heard testimony from J.A.'s paternal grandmother, who testified that while she was not a member of an American Indian tribe, both her mother and grandmother were members. J.A.'s paternal grandmother specified that her mother and grandmother were members of the "Chumash and Salinan" tribe. She provided a tribal roll number for her grandmother, and indicated that she did not know whether she herself was eligible for membership. J.A.'s paternal grandmother testified that she did not know whether there was Native American ancestry on the paternal grandfather's side of the family. The juvenile court also heard testimony from J.A.'s paternal aunt, who did not have additional information regarding the family's Native American ancestry beyond that provided by her mother. A.D. was present as well and confirmed that he did not have Native American ancestry. The juvenile court sustained the petition, removed J.A. from parental custody, and found ICWA did not apply. The court stated, "[t]here was reason to believe that [J.A.] is an Indian child," the social worker has "conducted a diligent inquiry into the child's possible Indian heritage, including contacting the possible tribes, the BIA, and CDSS. There is no reason to know the child is an Indian child."

---

[5] There was initially some dispute regarding J.A.'s paternity. The juvenile court ultimately adjudged Father to be J.A.'s biological father. Mother's husband at the time of J.A.'s birth, A.D., was believed to be J.A.'s presumed father pursuant to Family Code section 7611, subdivision (a), though there was some ambiguity due to the absence of a marriage certificate. The juvenile court also excluded a third individual as J.A.'s father. For purposes of this appeal, we refer to mother's husband, A.D., as presumed father.

In its reports filed in anticipation of the section 366.26 hearing, the Department detailed additional inquiry efforts it had made since the court's dispositional order. The Department reported contacting J.A.'s maternal grandmother, paternal grandmother, paternal aunts, paternal uncle, paternal cousins, and paternal relative caregiver. None of the family members provided new or additional information regarding the family's Native American heritage. These section 366.26 reports again failed to reflect any attempts by the Department to contact BIA or CDSS.

At the section 366.26 hearing, the court again found ICWA did not apply and terminated Father's parental rights. Father timely appealed the juvenile court's order. After Father filed his opening brief, the parties jointly moved for summary reversal.

On appeal, Father contends that the juvenile court's order must be reversed and the matter remanded because the juvenile court failed to ensure compliance with ICWA. Father argues that the Department's failure to conduct further investigation into potential Indian ancestry violated ICWA. The Department concedes that its investigation was insufficient because it failed to contact BIA or CDSS. The parties further agree that reversal is appropriate. To minimize delay, they jointly request that this court reverse and remand the matter pursuant to their stipulation for the limited purpose of allowing the Department to conduct a proper inquiry and send notice under ICWA as appropriate. (*In re N.D.* (2020) 46 Cal.App.5th 620, 624.)

The parties' joint motion supports the conclusion that a summary reversal pursuant to stipulation is appropriate under the facts of this case and the law. (See Code Civ. Proc., § 128, subd. (a)(8).) For the reasons stated in the motion, the court finds that there is no possibility that the interests of nonparties or the public will be adversely affected by the reversal. Summary reversal of the judgment would place the parties in the same position they would be in if the appeal were successfully prosecuted to completion, would save both private and judicial resources because it would obviate the need for further briefing by the parties and review of the record by this court, and most

4

importantly, would minimize delay in permanency for the child. Both public policy and the public interest are served by these outcomes.

This court further concludes that the parties' grounds for requesting reversal are reasonable. While the Department conducted a thorough inquiry into J.A.'s family background for purposes of determining Native American ancestry, it failed to contact BIA or CDSS to ascertain membership or eligibility for membership in other tribes. The parties, therefore, agree that the Department's ICWA inquiry was deficient and that the juvenile court erred in finding ICWA did not apply without ensuring a sufficient inquiry. They also agree that if, after ensuring compliance, the court again finds that ICWA does not apply, the court can reinstate the prior selection and implementation order. These grounds for jointly requesting reversal outweigh the erosion of public trust that may result from the nullification of a judgment and outweigh the risk that the availability of a stipulated reversal will reduce the incentive for pretrial settlement. Public trust in the courts is enhanced, not eroded, when parties recognize and acknowledge errors and agree to resolve them with limited delay. (See *Union Bank of Cal. v. Braille Inst. of Am.* (2001) 92 Cal.App.4th 1324.)

## DISPOSITION

The July 19, 2022 order terminating Father's parental rights is reversed pursuant to the stipulation of the parties. The matter is remanded to the juvenile court for the limited purpose of ensuring compliance with ICWA. If the court determines that the requirements of ICWA have been met, the court shall reinstate the order. The remittitur shall issue forthwith.

_____

Greenwood, P. J.

WE CONCUR:

_____

Grover, J.

_____

Danner, J.

H050310 In re J.A.; Santa Clara County DFCS v. J.A.